UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JAMIE W. EADS | : | |
|    Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:10-cv-1153 (VLB) |
| MILFORD HOSPITAL | : | |
|    Defendant. | : | February 23, 2011 |

## MEMORANDUM OF DECISION GRANTING

## DEFENDANT'S MOTION TO DISMISS [DOC. #9]

The Plaintiff, Jamie Eads (hereinafter referred to as "Eads") brings suit against the Defendant, Milford Hospital, Inc. (the "Hospital") for alleged violations of the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd in connection with three visits to the Defendant's emergency room on or about July 27, 2007. [Doc. #1]. The Defendant moves to dismiss the Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for which relief can be granted. [Doc. #9]. For the reasons stated below, the Defendant's motion to dismiss is GRANTED as the Plaintiff's claim is barred by the EMTALA's two year statute of limitations.

### I. Factual and Procedural Background

Pursuant to his complaint, the Plaintiff alleges that on July 27, 2007, he was rushed to the Hospital with a life threatening adverse reaction to medication and that Hospital staff "left the patient when they asked if he had insurance and employment and he responded no" and that the Hospital discharged Eads and

instructed him to continue on one of his medications. Eads alleges that upon continuing the medication he returned to the Emergency Room a second time in critical condition, received a CT brain scan, and was again discharged with a potential drug reaction diagnosis. Eads further alleges that after a few hours he experienced trouble breathing and upon returning to the Hospital a third time, was scolded by Hospital personnel for returning via ambulance, and released with a diagnosis of anxiety after receiving a Chest CT scan. The Defendant alleges that an acute brain hemorrhage was clearly visible on CT scans of his brain, and that he subsequently suffered from symptoms of "brain damage, vision and breathing damage" and filed a complaint with the Connecticut Department of Public Health, but that the Department of Public Health failed to adequately investigate the matter. The Plaintiff's complaint to the Department of Public Health reflects that he reported that the three aforementioned visits to the emergency room took place on July 27, 2007 and July 28, 2007[1].

## II. Discussion

### A. Standard of Review

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions'

---

[1] For the purposes of Federal Rule of Civil Procedure 12(b)(6), "the complaint Is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.* 282 F.3d 147, 152 (2d Cir. 2002).

2

or 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (internal quotations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949-50). "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal,* 129 S. Ct. at 1950). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (internal quotation marks omitted).

### B. Sufficiency of the Plaintiff's EMTALA Claim

The Defendant asserts that the Plaintiff's claim must be dismissed because he did not allege that the Hospital failed to perform an adequate medical screening

examination and also because plaintiffs are barred from using the EMTALA to circumvent state remedies for medical malpractice or medical negligence.

The EMTALA applies to hospitals that participate in the federal Medicare program. *Hardy v. New York City Health & Hosp.s*, 164 F.3d 789, 792 (2d Cir. 1999). To state a claim under the EMTALA, Eads must allege that he (1) went to the Defendant's emergency room (2) suffering from an emergency medical condition, and that the Hospital either (3) failed to adequately screen him to determine whether he had such a condition, or (4) discharged or transferred him before the emergency condition was stabilized. *Id.*; *Fisher v. New York Health & Hosp.s Corp.*, 989 F. Supp. 444, 448 (E.D.N.Y. 1998); *Owens v. Presbyterian Hosp.*, No. 94 Civ. 6004 (RPP), 1995 WL 464950, at *1 (S.D.N.Y., Aug. 4, 1995). In turn, the EMTALA defines an "emergency medical condition" as:

> (A) a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in - -
> (i) placing the health of an individual . . . in serious jeopardy,
> (ii) serious impairment to bodily functions, or
> (iii) serious dysfunction of any bodily organ or part . . .

42 U.S.C. § 1395dd(e)(1)(A). Further the statute defines "to stabilize" as "to provide such medical treatment of the [emergency medical] condition as may be necessary to assure, within reasonable medical probability that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility . . ." and that "stabilized" means "no material deterioration of the condition is likely, within reasonable medical probability, to result from or occur during the transfer [including discharge] of the individual from a facility . . . ." 42 U.S.C. § 1395dd(e)(3)(A)-(B).

4

The Second Circuit has explained that the

> EMTALA is not a substitute for state law on medical malpractice. It was not intended to guarantee proper diagnosis or to provide a federal remedy for misdiagnosis or medical negligence. Instead, EMTALA was enacted to fill a lacuna in traditional state tort law by imposing on hospitals a legal duty (that the common law did not recognize) to provide emergency care to all.

*Hardy*, 164 F.3d at 792 (internal citations and quotation marks omitted). Therefore, while the "legislative history of EMTALA demonstrates that Congress never intended to displace state malpractice law," *Id.* at 793, EMTALA does obligate hospitals participating in the federal Medicare program to conduct an appropriate medical screening examination to determine if an emergency medical condition exists, and to stabilize such a medical condition before transfer or discharge. *Id.* at 792.

Upon reviewing the Complaint, it is not apparent that Eads, as a *pro se* plaintiff, fails to plead sufficient factual content, or more so that he is unable to plead sufficient factual content if provided leave to amend his complaint, to give his asserted claim facial plausibility. *See Iqbal*, 129 S. Ct. at 1949 (2009) (stating that a complaint "must contain sufficient factual matter accepted as true, to state a claim to relief that is plausible on its face.") (internal citation and quotation marks omitted); *See also Shomo v. City of New York*, 579 F.3d 177, 183 (2d Cir. 2009) (stating that a *pro se* complaint is to be read liberally and should not be dismissed without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated") (internal citation and quotation marks omitted).

The Plaintiff alleges that during multiple visits to the emergency room the Defendant was released following assessment with diagnoses such as anxiety, and adverse drug reaction, and in doing so failed to review results of CT scans of his brain which he alleges showed a clearly visible acute brain hemorrhage, and that "[e]mergency staff left the patient when they asked if he had insurance and employment and he responded no." [Doc. #1].  The Complaint therefore could be interpreted, particularly with further factual allegations, as an indication that the Defendant Hospital curtailed what would otherwise be its standard treatment of the Plaintiff upon learning of his lack of means to pay for treatment, and failed to adequately stabilize an emergency medical condition relating to the alleged brain hemorrhage.

Nevertheless, such speculation or further amendment is unhelpful and futile, as the Plaintiff's cause of action is barred by the EMTALA's two year statute of limitations as the statute mandates that "[n]o actions may be brought . . . more than two years after the date of the violation with respect to which the action is brought." 42 U.S.C. § 1395dd(d)(2)(c).  The Plaintiff filed his complaint on July 26, 2010, but the date of the alleged violation, as reflected by his complaint, are the dates of the Plaintiff's three hospital visits between July 27, 2007 and July 28, 2007, during which the Plaintiff allegedly received inadequate care.  Accordingly, the statute of limitations expired nearly a year before the date of this action's filing and the Plaintiff's claim is time-barred.  *See Owens*, 1995 WL 464950 (dismissing plaintiff's complaint because it was time barred even though the complaint adequately pleaded a cause of action under the EMTALA).

## III. CONCLUSION

Based on the above reasoning, the Defendant's motion to dismiss [Doc. #9] is GRANTED. The Clerk is directed to close this case.

IT IS SO ORDERED.

      /s/
Vanessa L. Bryant
United States District Judge

Dated at Hartford Connecticut: February 23, 2011.